IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


RONALD CASON,                          :

      Plaintiff,                   :

                             Case No. 3:03cv233

      vs.                          :

                        JUDGE WALTER HERBERT RICE

INTERNATIONAL TRUCK AND                :
ENGINE CORP.,                          :

      Defendant.                   :


DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (DOC. #16); DECISION AND ENTRY
OVERRULING DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S
AFFIDAVIT (DOC. #27); JUDGMENT TO BE ENTERED IN FAVOR OF
DEFENDANT AND AGAINST PLAINTIFF; TERMINATION ENTRY


Plaintiff had been employed by the Defendant for nearly thirty years, most recently as a team leader or supervisor in Department 51, before being discharged in January, 2003, as part of a reduction in force.[1]  During that reduction in force, the Defendant discharged 62 supervisors, including the Plaintiff.  The genesis of that reduction in force was the Defendant's decision to close the body shop and one of the assembly lines at its manufacturing facility located on Urbana Road in

---

[1]Because this case comes before the Court on the Defendant's Motion for Summary Judgment (Doc. #16), the Court sets forth the facts and circumstances in the manner most favorable to the Plaintiff.

Springfield, Ohio. Those closings occurred in March, 2002, with 60 supervisors being discharged. Although the Plaintiff was not discharged at that time, he was transferred to Department 51, where he was supervised by the head of that department, Sidney Slaughter ("Slaughter"). Before the January, 2003, reduction in force, six team leaders, such as Plaintiff, had been employed in Department 51. Defendant first discharged two of those team leaders, one because he had agreed to be selected for the reduction in force, and the other because he was not able to perform at the level Defendant expected. As a result, four team leaders, including the Plaintiff, remained employed in Department 51. After a supervisor from another department, whose job had been eliminated, was transferred into Department 51, Defendant decided to eliminate one more team leader as part of the reduction in force. The Plaintiff was selected to be discharged. According to the Defendant, Plaintiff was discharged, because he was less qualified than the three team leaders in Department 51 who were retained and the team leader who had been transferred into that Department.

At the time of his discharge, the Plaintiff was participating in a number of benefit plans offered by the Defendant, including its pension plan. The Plaintiff was credited with 29.5 years service under that plan and was entitled to take early retirement at the age of 55. He selected that option in November, 2003. The retirement benefit he received as a result taking early retirement after 29.5 years of service is no different than that he would have received, if he had remained employed by the Defendant for 30 years.

In his Amended Complaint (Doc. #5), Plaintiff sets forth four claims for relief, to wit: 1) a claim that he was discharged because of his age, in violation of

Chapter 4112 of the Ohio Revised Code (First Claim for Relief); 2) a claim of wrongful discharge in violation of the public policy against age discrimination (Second Claim for Relief); 3) a claim that he was discharged in order to interfere with his rights under employee benefit plans, in violation of § 510 of the Employee Retirement Income Security Act, 29 U.S.C. § 1140 (Third Claim for Relief); and 4) a claim that he was discharged because of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., (Fourth Claim for Relief).  This case is now before the Court on Defendant's Motion for Summary Judgment (Doc. #16) and its Motion to Strike Plaintiff's Affidavit (Doc. #27).  As a means of analysis, the Court will initially rule upon Defendant's request that the Court strike Plaintiff's affidavit, following which it will turn to Defendant's Motion for Summary Judgment.

I.  Defendant's Motion to Strike Plaintiff's Affidavit (Doc. #27)

With this motion, Defendant requests that the Court strike portions of paragraphs 6 and 9 of Plaintiff's affidavit.[2]  According to Defendant, the allegedly offensive portions of those paragraphs must be stricken and ignored, because the statements therein either contradict or substantially supplement his previously given deposition testimony.  The pertinent statements in his affidavit and deposition relate to 2002, when Plaintiff was transferred into Department 51 as a team leader.  According to the excerpts of Plaintiff's deposition testimony relied upon by Defendant, Slaughter expressed satisfaction when he (Plaintiff) was transferred into that Department, because he would be available to train the

---

[2]Plaintiff's affidavit is attached to Doc. #21.

younger supervisors.  Plaintiff makes the same statement in his affidavit.
However, in paragraphs 6 and 9 of that document, Plaintiff also indicates that
Slaughter expressed dissatisfaction with the performance of those younger
supervisors.  Defendant requests that the Court strike all references to Slaughter's
dissatisfaction with such performance set forth in ¶¶ 6 and 9 of Plaintiff's
affidavit.[3]

The Sixth Circuit has held that a party cannot create a genuine issue of
material fact, by submitting an affidavit which contradicts his previously given
deposition testimony.  See e.g., Whitaker v. Wallace, 170 F.3d 541, 543 n.3 (6th
Cir. 1999); Reid v. Sears, Roebuck & Co., 790 F.2d 453, 460 (6th Cir. 1986);
Biechele v. Cedar Point, Inc., 747 F.2d 209, 215 (6th Cir. 1984).  Herein, to show
such a contradiction, Defendant relies upon Plaintiff's deposition testimony which
begins with the following question by its counsel:

> Question: What circumstances and facts do you think were discriminatory
> on the basis of age other than the facts surrounding your discharge?

I Plaintiff's Dep. at 17.  Plaintiff responded by explaining Slaughter's happiness
that he (Plaintiff) had transferred into Department 51, because he could train the
younger supervisors.  Id at 17-18.  Throughout the remainder of the excerpts from
Plaintiff's deposition, upon which Defendant relies, he engaged in a dialogue with
Defendant's counsel, whereby the latter questioned whether being required to train
younger supervisors could constitute age discrimination.  Additionally, in response

---

[3]Defendant also requests that the Court strike similar statements contained in ¶ 5
of Plaintiff's affidavit.  That paragraph, however, does not contain even a remote
suggestion that Slaughter was dissatisfied with the performance of the younger
supervisors.

to a question by defense counsel asking him to identify one such supervisor,

Plaintiff named Chris McDonald.

As is indisputable from the deposition testimony upon which Defendant

relies, there is no contradiction between that testimony and the statements in ¶¶ 6

and 9 of Plaintiff's affidavit that Slaughter had expressed his dissatisfaction with

the performance of the younger supervisors.  During his deposition, Plaintiff did not

testify about what Slaughter had told him, because defense counsel did not

remotely question him on the subject of Slaughter's opinion of the ability of the

younger supervisors.  Seemingly, Defendant would have this Court impose upon a

lay deponent the obligation of disclosing all information the party taking the

deposition might subsequently decide it should have asked about during that

deposition.  Not surprisingly, none of the cases cited by Defendant remotely

support that proposition, because each one of them involves the striking of an

affidavit, because the affiant had been questioned about information in his affidavit

and had failed to disclose it at his deposition.  At the risk of being repetitive,

defense counsel did not question Plaintiff about the subject in issue.[4]

Accordingly, the Court overrules Defendant's Motion to Strike (Doc. #27).

---

[4]Defendant also requests that the Court strike ¶¶ 6 and 9 of Plaintiff's affidavit,
because the statements therein are conclusory and self-serving.  The Court will
decline that request.  There is nothing conclusory about the statements in those
paragraphs; Plaintiff merely relates what he was told by Slaughter.  Said testimony
would be admissible at trial, if relevant, pursuant to Fed. R. Evid. 801d(2)(D).  As
for the affidavit being self-serving, the undersigned, having been a judicial officer
for more than thirty-five years, has yet to see an affidavit that counsel has
submitted as part of summary judgment practice which harms, rather than serves,
his client's interests.

II.  Defendant's Motion for Summary Judgment (Doc. #16)

Having overruled Defendant's Motion to Strike Plaintiff's Affidavit
(Doc. #27), the Court turns to Defendant's Motion for Summary Judgment
(Doc. #16), beginning its analysis by setting forth the standards it must apply
whenever it rules upon a request for summary judgment.

Summary judgment must be entered "against a party who fails to make a
showing sufficient to establish the existence of an element essential to that party's
case, and on which that party will bear the burden of proof at trial."  Celotex Corp.
v. Catrett, 477 U.S. 317, 322 (1986).  Of course, the moving party:

> always bears the initial responsibility of informing the district court of
> the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions on
> file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

Id. at 323.  See also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991)
(The moving party has the "burden of showing that the pleadings, depositions,
answers to interrogatories, admissions and affidavits in the record, construed
favorably to the nonmoving party, do not raise a genuine issue of material fact for
trial.") (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir. 1987)).  The
burden then shifts to the nonmoving party who "must set forth specific facts
showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  Thus, "[o]nce the
moving party has met its initial burden, the nonmoving party must present
evidence that creates a genuine issue of material fact making it necessary to
resolve the difference at trial."  Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d
1241, 1245 (6th Cir. 1995).  Read together, Liberty Lobby and Celotex stand for

the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). <u>Street v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1478 (6th Cir. 1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). <u>See</u> <u>also</u> <u>Michigan Protection and Advocacy Service, Inc. v. Babin</u>, 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. <u>Celotex Corp.</u>, 477 U.S. at 324. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" <u>Hancock v. Dodson</u>, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and

draw all reasonable inferences in the favor of that party. Anderson, 477 U.S. at 255 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not … obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." Interroyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990). See also L.S. Heath & Son, Inc. v. AT&T Information Systems, Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n. 7 (5th Cir.), cert. denied, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment …."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

Defendant argues that it is entitled to summary judgment on all four claims set forth by Plaintiff in his Complaint. As a means of analysis, the Court will address the Plaintiff's in the order in which they appear in the Amended Complaint, discussing the two statutory age discrimination claims together.

A. Plaintiff's Claims of Age Discrimination in Violation of Chapter 4112 and the
ADEA (First and Fourth Claims for Relief, respectively)

As is indicated, the Plaintiff alleges in his First and Fourth Claims for Relief
that he was discharged because of his age, in violation of Chapter 4112 and the
ADEA. In Godfredson v. Hess & Clark, Inc., 173 F.3d 365 (6th Cir. 1999), the
Sixth Circuit reviewed the familiar burden shifting approach established in Texas
Department of Community Affairs v. Burdine, 450 U.S. 248 (1981), and
McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), which, in the absence of
direct evidence of discrimination,[5] is applicable to claims of age discrimination
under the ADEA, to wit: 1) the plaintiff initially must establish the elements of a
prima facie case of discrimination; 2) if the plaintiff meets that requirement, the
burden of production shifts to the defendant to articulate a non-discriminatory
reason for taking the employment action in question; and 3) if the defendant meet
its burden of production, the burden shifts to the plaintiff to prove, by the
preponderance of the evidence, that the defendant's articulated reason is a pretext
for discrimination.[6] Id. at 371. In Godferdson, the Sixth Circuit also reviewed the
elements of a prima facie case of age discrimination in a reduction in force case:

> [A] plaintiff must first establish a prima facie case by showing that (1) he
> was a member of the protected class, (2) he was subjected to an adverse
> employment action, (3) he was qualified for the particular position, and (4)
> the successful applicant was a substantially younger person. See Bush v.
> Dictaphone Corp., 161 F.3d 363, 368 (6th Cir. 1998).

_____

[5]Plaintiff does not argue that there is direct evidence of age discrimination.

[6]Of course, since this litigation comes before the Court on the Defendant's Motion
for Summary Judgment (Doc. #19), the Plaintiffs need only raise genuine issues of
material fact concerning the elements of their prima facie cases of discrimination
and pretext.

This framework is further modified if a plaintiff is discharged in connection with a reduction of force. In such a case, the plaintiff is not required to plead the fourth prong of the prima facie framework because in a reduction-of-force situation the plaintiff is not in fact replaced. See Scott v. Goodyear Tire & Rubber Co., 160 F.3d 1121, 1126 (6th Cir. 1998). Instead, the plaintiff must present "'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out [the plaintiff] for discharge for impermissible reasons.'" Id. (quoting Barnes v. GenCorp Inc., 896 F.2d 1457, 1465 (6th Cir. 1990)) (brackets in original). If the plaintiff makes out a prima facie case, the burden then shifts to the defendant to produce evidence of a non-discriminatory reason for its action, which will necessarily be the alleged reduction in force. See id.; McDonnell Douglas, 411 U.S. at 802-03. The burden then returns to the plaintiff to demonstrate that the defendant's proffered reason is pretextual. See Scott, 160 F.3d at 1126; McDonnell Douglas, 411 U.S. at 802-03.

Id. Accord Gragg v. Somerset Technical College, 373 F.3d 763, 767-68 (6th Cir. 2004); Rowan v. Lockheed Martin Energy Systems, Inc., 360 F.3d 544, 547 (6th Cir. 2004). It bears emphasis that in a typical age discrimination case (i.e., one that does not arise out a reduction in force), in which the plaintiff alleges that he was discharged because of his age, the fourth element of the prima facie case requires proof that he was replaced by a substantially younger person. Id. See also, O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 310-13 (1996).

As is indicated, if the plaintiff makes out a prima facie case of discrimination, the burden of production shifts to the defendant to articulate a nondiscriminatory reason for taking the adverse employment action. If the defendant meets its burden in that regard, the plaintiff must then establish pretext. In Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078 (6th Cir. 1994), the Sixth Circuit discussed the methods by which a plaintiff can establish pretext:

To make a submissible case on the credibility of his employer's explanation, the plaintiff is "required to show by a preponderance of the

- 10 -

evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge."  McNabola v. Chicago Transit Authority, 10 F.3d 501, 513 (7th Cir. 1993) (emphasis added and quotation marks omitted).  The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, i.e., that they are "factually false."  [Anderson v.] Baxter Healthcare, 13 F.3d [1120, 1123-24 (7th Cir. 1994)].  The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff.  These two types of rebuttals are direct attacks on the credibility of the employer's proffered motivation for firing plaintiff and, if shown, provide an evidentiary basis for what the Supreme Court has termed "a suspicion of mendacity."  Hicks, 509 U.S. at [511], 113 S.Ct. at 2749.  As Hicks teaches, such a showing permits, but does not require, the factfinder to infer illegal discrimination from the plaintiff's prima facie case.

The second showing, however, is of an entirely different ilk. There, the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal. The plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one.  In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant.  In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext or coverup.

Id. at 1084 (emphasis in the original).  Accord Anthony v. BTR Automotive Sealing

Systems, Inc., 339 F.3d 506 (6th Cir. 2003); Dews v. A.B. Dick Co., 231 F.3d

1016, 1021 (6th Cir. 2000); Kline v. Tennessee Valley Authority, 128 F.3d 337,

346-47 (6th Cir. 1997).

The Ohio Supreme Court has held that the McDonnell Douglas framework

must be applied when resolving claims of age discrimination under Ohio law.  See

e.g., Coryell v. Bank One Trust Co. N.A., 101 Ohio St.3d 175, 803 N.E.2d 781

(2004); Mauzy v. Kelly Services, Inc., 75 Ohio St.3d 578, 664 N.E.2d 1272

(1996); Barker v. Scovill, Inc., 6 Ohio St.3d 146, 451 N.E.2d 807 (1983).  Accord

Peters v. Lincoln Elec. Co., 285 F.3d 456, 469 (6th Cir. 2002).

Herein, the Defendant initially argues that the evidence fails to raise a

genuine issue of material fact on question of whether he was qualified to be a

supervisor for the Defendant, the third element of his prima facie case.  This Court

rejects that argument.  In Cline v. Catholic Diocese of Toledo, 206 F.3d 651 (6th

Cir. 2000), the plaintiff alleged that the defendant had terminated her employment

as a teacher because she had become pregnant.  The defendant, on the other

hand, argued that it had terminated her because she had engaged in premarital sex.

The District Court concluded that the defendant was entitled to summary

judgment, since the evidence did not raise a genuine issue of material fact as to

whether she was qualified for her position (engaging in premarital sex had, in the

eyes of the defendant, rendered her morally unfit to continue to teach at its

elementary school).  Upon appeal, the Sixth Circuit reversed, writing:

> The [district] court found Cline "unqualified" under prong [three] of the prima
> facie case because she had not lived up to the promises she made to
> "exemplify the moral values taught by the Church."  J.A. at 332.  Because
> her pregnancy due to premarital sex meant that "she no longer met all the
> qualifications of her position," even strong evidence as to her satisfactory
> performance (i.e., her evaluations and teaching record) could not overcome
> these moral failings. J.A. at 333.  This analysis improperly imported the later
> stages of the McDonnell Douglas inquiry into the initial prima facie stage.
> As discussed infra, St. Paul alleges that it did not renew Cline's contract
> because she violated its premarital sex policy, which constituted part of the
> broader ministerial requirements of being a St. Paul teacher; conversely,
> Cline argues that this rebuttal is a pretext for discrimination.  Rather than
> resolve this debate at the prima facie stage, McDonnell Douglas requires that
> the district court consider this dispute at the inquiry's third stage, when its
> role is to decide the "ultimate question" of discrimination.  In other words,
> when assessing whether a plaintiff has met her employer's legitimate
> expectations at the prima facie stage of a termination case, a court must
> examine plaintiff's evidence independent of the nondiscriminatory reason

"produced" by the defense as its reason for terminating plaintiff. The district court clearly failed to do this, improperly conflating the distinct stages of the McDonnell Douglas inquiry.

Id. at 660-61. Similarly, herein, the Defendant contends that it selected Plaintiff for discharge because he was less qualified than other team leaders. Accordingly, the Court concludes that this issue must be resolved when addressing the third stage of the McDonnell Douglas analytical framework.

Alternatively, the Defendant argues that it is entitled to summary judgment, because the evidence fails to raise a genuine issue of material fact on the fourth element of Plaintiff's prima facie case of discrimination. As is indicated above, in a reduction in force case, the fourth element requires "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out [the plaintiff] for discharge for impermissible reasons." Godferdson, 173 F.3d at 371. Plaintiff argues that the evidence raises such an issue of fact on this issue. In particular, he points to comments made by Slaughter that he (Plaintiff) should use a bicycle to get to the end of the assembly line, because his age was catching up to him. Plaintiff also points to fact that Slaughter repeatedly asked him his age. This Court cannot agree with Plaintiff that Slaughter's comments indicate that he (Plaintiff) was singled out for discharge, because of his age. Plaintiff has presented evidence that Slaughter did not recommend that Plaintiff be discharged. On the contrary, he had decided that the Plaintiff would remain employed as a team leader in Department 51. Indeed, during his deposition, Slaughter testified that the announcement that Plaintiff would be discharged was a surprise to him. Slaughter Dep. at 63-64. Nevertheless, the decision makers, individuals other than Slaughter, selected the Plaintiff as the team leader in

Department 51 to be discharged. That evidence supplied by Plaintiff causes the Court to conclude that Slaughter's comments were unrelated to Plaintiff's discharge. The Court assumes, for present purposes, that Slaughter's comments displayed an age-related bias. However, while Slaughter did not recommend that the Plaintiff be discharged and had decided that he would be retained, others, who had not made comments evidencing a bias against age, decided that the Plaintiff would be discharged.[7]

Based upon the foregoing, the Court concludes that the evidence fails to raise a genuine issue of material fact on the fourth element of Plaintiff's prima facie case of age discrimination.[8] Accordingly, the Court sustains Defendant's Motion for Summary Judgment (Doc. #16), as it relates to his claims that he was discharged because of his age, in violation of Chapter 4112 and the ADEA, the First and Fourth Claims of his Amended Complaint (Doc. #5).

II. Plaintiff's Claim of Wrongful Discharge in Violation of Public Policy (Second Claim for Relief)

For his Second Claim for Relief, Plaintiff sets forth a common law claim, alleging that his discharge violated the public policy of Ohio against age discrimination, as embodied by the ADEA and Chapter 4112. The Defendant

---

[7]Plaintiff also cites the evidence that Slaughter had required that he train younger supervisors. Quite simply, the Court cannot conceive that this requirement constitutes evidence that the Plaintiff was singled out for discharge, because of his age.

[8]Given that conclusion, it is not necessary to address Defendant's contention that it has met its burden of articulating a non-discriminatory reason for discharging the Plaintiff, and that the Plaintiff has failed to demonstrate that the evidence raises a genuine issue of material fact on the question of pretext.

moves for summary judgment on this claim, arguing that such a common law claim cannot be maintained.  For reasons which follow, this Court agrees.

In Ohio, an employee-at-will may be terminated by his or her employer for any reason, or no reason at all, as long as the termination is not contrary to law.[9] Phung v. Waste Mgt., Inc., 23 Ohio St.3d 100, 102, 491 N.E.2d 1114, 1116 (1986).  However, an exception to the employment-at-will doctrine exists where the termination is contrary to the clear public policy of Ohio.  Greeley v. Miami Valley Maintenance Contrs., Inc., 49 Ohio St.3d 228, 551 N.E.2d 981 (1990).  In Collins v. Rizkana, 73 Ohio St.3d 65, 69-70, 652 N.E.2d 653 (1995), the Ohio Supreme Court set forth the four elements which must be established before a public policy exception to the employment-at-will doctrine will be recognized:

> 1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).
> 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).
> 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).
> 4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).

Id. at 69-70, 652 N.E.2d at 657-58 (internal quotation marks and citations omitted; brackets and emphasis in the original).  The first two issues of that analytical framework are questions of law, while the last two are questions of fact. Id. at 70, 653 N.E.2d at 658.

---

[9]The Plaintiffs have failed to challenge the conclusion that they were at-will employees.

In Wiles v. Medina Auto Parts, 96 Ohio St.3d 240, 773 N.E.2d 526 (2002), the Ohio Supreme Court addressed the question of whether a party could maintain a wrongful discharge claim in violation of public policy, predicated upon the theory that discharge was in violation of the Family and Medical Leave Act ("FMLA"), 26 U.S.C. § 2601 et seq. The Wiles court focused upon the second prong of such a claim, the jeopardy element. The court indicated that establishing the jeopardy element depended upon whether the absence of such a wrongful discharge claim, based solely on a violation of the FMLA, "would seriously compromise the Act's statutory objectives by deterring eligible employees from exercising their substantive leave rights." Id. at 244, 773 N.E.2d at 531. The Wiles court answered that inquiry in the negative, since "there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests." Id. As a consequence, the Ohio Supreme Court concluded that "the public policy expressed in the statute would not be jeopardized by the absence of a common-law wrongful-discharge action in tort[,] because an aggrieved employee has an alternate means of vindicating his or her statutory rights and thereby discouraging an employer from engaging in the unlawful conduct," as a result of the express right of action established by the FMLA. Id.

Following Wiles, both state and federal courts have held that a common law, wrongful discharge claim, for violating the public policy established by Chapter 4112 and federal employment discrimination statutes, does not exist. For instance, in Carrasco v. NOAMTC, Inc., 2004 WL 2756838 (6th Cir. 2004), the Sixth Circuit affirmed the District Court's dismissal of the plaintiff's claim of

wrongful discharge in violation of the public policy embodied in Chapter 4112 and Title VII, because the remedies available under those statutes adequately protected society's interests.  Accord, Lewis v. Fairview Hospital, 156 Ohio App.3d 387, 806 N.E.2d 185 (2004) (refusing to recognize a wrongful discharge claim on the basis of race discrimination in violation of the public policy established by Chapter 4112, because of the adequacy of the remedy established by that statute); James v. Delphi Auto. Sys., 2004 WL 2307825, (Ohio App. 2004) (refusing to recognize a wrongful discharge claim on the basis of race and sex discrimination in violation of the public policy established by Chapter 4112, because of the adequacy of the remedy established by that statute); Barlowe v. AAAA International Driving School, Inc., 2003 WL 22429543 (Ohio App. 2003) (refusing to recognize a wrongful discharge claim on the basis of disability discrimination in violation of the public policy established by Chapter 4112, because of the adequacy of the remedy established by that statute); Storm v. The Sabre Group, 2005 WL 1917357 (S.D.Ohio) (refusing to recognize a wrongful discharge claim on the basis of sex discrimination in violation of the public policy established by Chapter 4112 and Title VII, because of the adequacy of the remedy established by those statutes); Thaman v. Ohiohealth Corp., 2005 WL 1532550 (S.D.Ohio 2005) (same); Satterwhite v. Faurecia Exhaust Systems, Inc., 2005 WL 1279253 (S.D.Ohio 2005) (refusing to recognize a wrongful discharge claim on the basis of race discrimination in violation of the public policy established by Chapter 4112 and Title VII, because of the adequacy of the remedy established by those statutes); Williams v. Allstate Ins. Co., 2005 WL 1315756 (N.D.Ohio 2005) (refusing to recognize a wrongful discharge claim on the basis of age discrimination in violation

of the public policy established by Chapter 4112, because of the adequacy of the remedy established by that statute); Curry v. Consolidated Coal Corp., 2005 WL 1159410 (S.D.Ohio 2005) (refusing to recognize a wrongful discharge claim on the basis of age discrimination in violation of the public policy established by Chapter 4112 and the ADEA, because of the adequacy of the remedy established by those statutes).  This Court agrees with the foregoing decisions that the remedies provided by state and federal anti-discrimination statutes, herein Chapter 4112 and the ADEA, adequately protect the public policy embodied by those statutes, so that the public policy will not be jeopardized by in the absence of a common law claim for wrongful discharge in violation of that policy.  In Rice v. CertainTeed Corp., 84 Ohio St.3d 417, 419, 704 N.E.2d 1217, 1219 (1999), the Ohio Supreme Court held that the term "damages" in § 4112.99 of the Ohio Revised Code is "an inclusive term embracing the panoply of legally recognized pecuniary relief," such as compensatory and punitive damages.[10]  Given the breadth of that decision, it is difficult to imagine what remedy would be available in a common law, wrongful discharge action that is not available in an action under Chapter 4112.[11]

---

[10]Section 4112.99 provides a private right of action for violations of Chapter 4112.

[11]In Gessner v. City of Union, 159 Ohio App.3d 43, 823 N.E.2d 1 (2004), the court concluded that a plaintiff may maintain an action for wrongful discharge in violation of the public policy against age discrimination embodied in Chapter 4112. The Gessner court did not identify a remedy which would be available under the common law action that would not also be available under Chapter 4112.  This Court follows the decisions in Williams and Curry, wherein the courts reached the opposite conclusion, since the remedies available for age discrimination claims under Chapter 4112 and the ADEA are not materially different than those available under other employment discrimination statutes.  It bears emphasis that this Court is not bound by the decisions of Ohio's intermediate appellate courts.  Olsen v. McFaul, 843 F.2d 918, 933 (6th Cir. 1988).  There is no basis for holding that a

Based upon the foregoing, the Court concludes that the Plaintiffs' common law claims of wrongful discharge in violation of public policy are not cognizable, since the public policy allegedly violated is that established by the ADEA and Chapter 4112.  Accordingly, the Court sustains Defendant's Motion for Summary Judgment (Doc. #16), as it relates to Plaintiff's Second Claim for Relief.[12]

III.  Plaintiff's Claim that Defendant Violated § 510 of ERISA (Third Claim for Relief)

Defendant moves for summary judgment on Plaintiff's claim under § 510 of ERISA, and the Plaintiff has not opposed that request.  Section 510 makes it unlawful for any person to discharge a plan participant "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan."  29 U.S.C. § 1140.  In order to establish a prima facie

────────────────────

common law claim for wrongful discharge in violation of the public policy embodied in Chapter 4112 and Title VII is not available in light of Wiles, as the Sixth Circuit held in Carrasco, while holding that such a claim is available when the policy is that set forth in Chapter 4112 and the ADEA, merely because the Sixth Circuit decision arose out of allegations of race discrimination and this litigation involves underlying assertions of age discrimination.  Accordingly, this Court declines to follow Gessner.

[12]Parenthetically, Ohio courts have held that, when a wrongful discharge in violation of public policy is predicated upon the policy set forth in Chapter 4112, the defendant is entitled to summary judgment on the wrongful discharge claim, if it is entitled to same on the underlying discrimination or retaliation claim.  Vitatoe v. Lawrence Industries, Inc., 153 Ohio App.3d 609, 795 N.E.2d 125 (2003); Cochran v. Columbia Gas of Ohio, Inc., 138 Ohio App.3d 888, 742 N.E.2d 734 (2000).  Herein, the Court has concluded that the Defendant is entitled to summary judgment on Plaintiff's claims of age discrimination.  Therefore, it would have awarded summary judgment to Defendant on his common law wrongful discharge claim, predicated upon the allegation that he was a victim of age discrimination, thus violating the public policy embodied by the ADEA and Chapter 4112, even if those claims were cognizable.

case of interference under § 510, a plaintiff must show "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." Smith v. Ameritech, 129 F.3d 857, 865 (6th Cir. 1998) (internal quotation marks and citations omitted).  Therein, the Sixth Circuit reiterated that, "in an interference claim, the alleged illegal activity will have a causal connection to the plaintiff's ability to receive an identifiable benefit." Id. (internal quotation marks and citation omitted).

Herein, the Plaintiff has not identified such a benefit in either his Amended Complaint (Doc. #5) or in his Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. #18).  Since he was discharged about one-half year before attaining 30 years of service, he may be basing this claim upon the premise that he would have been eligible for increased retirement benefits, if he had been permitted to continue working for Defendant for an additional six months.  Such a claim would be fruitless, as Plaintiff was eligible to take early retirement, despite being credited with only 29.5 years of service.  Moreover, if he had remained employed by Defendant until he had been credited with 30 years of service, his early retirement benefit would have been no different than that which he is currently receiving.

Accordingly, the Court sustains the Defendant's Motion for Summary Judgment (Doc. #16), as it relates to Plaintiff's claim under § 510 of ERISA, the Third Claim for Relief in his Amended Complaint (Doc. #5).

Based upon the foregoing, the Court sustains Defendant's Motion for Summary Judgment (Doc. #16), in its entirety. Accordingly, the Court directs that judgment be entered in favor of Defendant and against Plaintiff.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

September 28, 2005

/s/ Walter Herbert Rice
WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT

Copies to:

Counsel of Record.